## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HOWARD LINDEN,

                Plaintiff,

v.                                          Case No. 13-CV-12450
                                        Honorable Denise Page Hood

OFFICER T. PIOTROWSKI
AND OFFICER S. ZAYTO,

                Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#22]

      Before the Court is Defendants, Officer Piotrowski and Officer Zayto's, Motion for Summary Judgment. **[Docket No. 22, filed February 24, 2014]** Plaintiff filed a Response to this Motion on March 18, 2014, **[Docket No. 24]** to which Defendants filed a Reply. **[Docket No. 25, filed March 25, 2014]** For the reasons discussed below, Defendants' Motion for Summary Judgment is **DENIED**.

## I.     BACKGROUND

      The Complaint alleges that on January 18, 2013, Decedent Plaintiff was attending a social gathering at a friend's house located at 322 Labelle in Highland Park. **[Compl. ¶ 10]** At approximately 11:40 p.m., someone in the house pulled out a gun and started firing shots. **[Id. at 11]** Decedent Black was shot in the shoulder

and informed his friend, Antoine Scott, that he had been shot. **[Id. at 11-12]** Highland Park Police Officers T. Piotrowski and S. Zayto responded to the scene after receiving a report of shots having been fired. **[Id. at 13]**

Upon arriving at the location, Officers Piotrowski and Zayto saw Antoine Scott standing on the porch of the house with a handgun in his left hand. **[Id. at 14-15]** Scott notified the officers that he had the gun to protect his family. **[Id. at 15]** The officers ordered Scott to put the gun on the ground, handcuffed him, and detained him the patrol vehicle. **[Id. at 16-19]** The Complaint alleges that Mr. Scott informed the officers that Decedent Black was inside of the home and suffered from a gunshot wound. **[Id. at 17]**

Once the officers entered the home, they observed, among others, Decedent Black. **[Id. at 20]** Officers Piotrowski and Zayto placed Black in handcuffs and detained him, though Black had informed the officers that he had been shot and repeatedly asked for medical attention. **[Id. at 21-22]** Instead of providing assistance, Plaintiff claims that the Defendant Officers told Decedent Black that he was not going to the hospital but "going to jail." **[Id. at 23]** The owner of the home, Ms. Charlotte Givens, was also inside of the home at the time that the officers were present and detained Decedent Black. **[Id. at 24]** She heard Black tell the officers

2

"multiple times" that he had been shot and saw the officers "ignore[] . . . Black's pleas for assistance." **[Id. at 25]**

Officers Piotrowski and Zayto leaned Decedent Black up against the wall "and kept telling him that he was going to jail. **[Id. at 27]** Ms. Givens spoke to the officers and asked them to help Mr. Black because he has been shot "but the officers did nothing." **[Id. at 28]** Ms. Givens was eventually detained and placed in a squad car to be taken to the police station. **[Id. at 28]** At the time that Ms. Givens was taken from the house, Mr. Black was still detained and had not received any medical assistance "for his obvious gunshot wound." **[Id. at 29]** An emergency crew did arrive on the scene but did not render any medical assistance to Mr. Black because the crew was not informed that he had been shot. **[Id. at 30]** By the time that Mr. Black received aid for his injuries, it was too late. He was pronounced dead at 12:54 a.m. and the cause of death was determined to be a gunshot wound to the right shoulder. **[Id. at 34]**

Plaintiff alleges that the Defendant Officers, Piotrowski and Zayto, "knowingly and willfully ignored" the decedent's "serious need for medical attention for his gunshot would to the shoulder for a prolonged period of time." **[Id/ at 31]** Plaintiff further claims that by the time the officers sought medical attention for the decedent, "irrevocable damage had already been done." **[Id. at 33]** Plaintiff's Complaint

requests relief pursuant to the following claims: Count I - Violation of Civil Rights Pursuant to the 14th Amendment to the Constitution and 42 U.S.C. § 1983, 1988 (against all Defendants) and Count II - Gross Negligence, Intentional Willful and Wanton Misconduct of all Defendants.

In their Motion to Dismiss, Defendants, Officers Piotrowski and Zayto, provide a different account of what occurred on January 18, 2013. Defendants contend that they did not violate the decedent's right to adequate medical treatment because they did not act with "deliberate indifference" or deny Mr. Black medical care. **[Docket No. 22, Pg ID 140]** Defendants allege that they entered the home—after arresting a man outside who was brandishing a weapon—and saw two people lying on the floor who appeared to have been shot. **[Id.]** The officers determined that one of those people had already died and the other was alive but suffered from a gunshot wound to the stomach. **[Id.]** During deposition, the officers testified that they did not know who the shooter had been and did not know if there were other people in the house with weapons. **[Id. at 142]** Specifically, Officer Piotrowski testified that whether other people were armed "was a concern" of both he and his partner and that after coming in contact with the decedent, Mr. Black did not look injured, was not bleeding, and "never indicated to [the officer] that he had . . . suffered a gunshot wound." **[Id. at 145]** Instead, Officer Piotrowski stated that it was his belief that the

4

decedent had ingested some drugs and that his injury, if any, was based on that. **[Id. at 146]**

Like Officer Piotrowski, Officer Kayto testified that when he encountered the decedent, he did not know if Mr. Black was the perpetrator. **[Id. at 147]** Kayto interrogated Mr. Black "to see who was in the house . . . and if he was okay" but, "based upon [Mr. Black's] answers, Officer Kayto was satisfied that Mr. Black was not injured and that there were no others in the house that could have been a danger to the officers. **[Id. at 148]**  Officer Kayto stated that he did not see any blood, gunshot wound, or obvious signs of injury on Kayto and that EMS was called for Kayto because he complained of a stomach aid, not a gunshot wound.  **[Id.]**  Kayto testified that no one from the house told him that Mr. Black had been shot. **[Id. at 149]**

In the Response to Defendants' Motion for Summary Judgment, Plaintiff points to what he deems to be discrepancies in the Defendant officers' testimony.  Plaintiff argues that these discrepancies—"some of them material to facts in dispute in this case—speak to the credibility of defendants' self-serving testimony, thereby creating questions of fact for a jury's consideration." **[Docket No. 24, Pg ID 368]** First, Plaintiff contends that there is a discrepancy regarding when Officer Piotrowski first encountered the decedent, "a material fact to determining when he knew Ronald was

5

suffering from a serious medical condition (gunshot wound) that needed medical attention." **[Id. at 369]** Plaintiff states that during Officer Piotrowski's deposition, Officer Piotrowski said that he entered the house and made a visual inspection of the immediate area around him, immediately went to Robert Givens, who was laying on the floor with a gunshot wound to the abdomen, but claimed that he did not encounter Mr. Black until after EMS arrived, almost 15-minutes later.  **[Docket No. 22, Defendants' Exhibit A, Deposition of Officer Piotrowski, Pg ID 181; 187, lines 13-18]**  Plaintiff asserts that this account is inconsistent with Officer Piotrowski's police report in which he "unequivocally states" that he and Officer Zayto first made a visual inspection of the whole house, at which time he (Piotrowski) came across Mr. Black.  Plaintiff argues that when asked about the inconsistency, Officer Piotrowski admitted that he had an initial encounter with Mr. Black before he went to help put pressure on Robert Givens's wound.  **[Id., Defendants' Exhibit A, Deposition of Officer Piotrowski, Pg ID 221-22]** Plaintiff also claims inconsistencies with whether the decedent, Mr. Black, ever affirmatively denied being shot and whether, if they checked the decedent in the manner in which they claimed to, they would have or could have seen that he had been shot.

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

6

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of demonstrating that summary judgment is appropriate.  *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974).   The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added).  To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact.  Any dispute as to a material fact must be established by affidavits or other documentary evidence.   Fed. R. Civ. P. 56(c).   "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted).  Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly

7

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

42 U.S.C. §1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws of the United States. *See Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990)(quoting 42 U.S.C. § 1983). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Due Process Clause of the Fourteenth Amendment "requires government officials to provide adequate medical care to individuals injured while apprehended by police." *Scozzari v. Miedzianowski*, 454 F. App'x 455, 464 (6th Cir. 2012) (citing *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). A claim for deliberate indifference to serious medical needs has both objective and subjective components. *Id.*; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir.2008). The objective component requires a showing that there was the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Phillips*, 534 F.3d at 539.

8

As in this instant case, in a deliberate-indifference case based on a delay of medical care, a constitutional violation arises if the injury in question is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention," and the resulting need for treatment was "not addressed within a reasonable time frame." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899–900 (6th Cir.2004). To establish the subjective component, a plaintiff must "allege facts which, if true, would show that the official . . . subjectively perceived facts from which to infer substantial risk to the [individual], that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001) (citing *Farmer*, 511 U.S. at 837). It is not necessary, however, to prove that the police officer acted "for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer*, 511 U.S. at 835).

Here, the Court is satisfied that summary judgment relief is inappropriate. Defendants contend that they acted reasonably and that they had no reason to know that Plaintiff was suffering from a gunshot wound at the time that they arrested him. Plaintiff contends—and the record shows—that there is a question as to whether the officers knew or should have known based on statements from witnesses at the scene as well as the statements made by the officers about what they saw and did that evening. Viewing the facts in the light most favorable to the Plaintiff, the Court is

9

persuaded that the circumstances surrounding the knowledge that the officers had at the time of the arrest and the appreciable amount of time that followed between detaining the decedent and the EMS taking him in for treatment raise genuine issues of material fact as to whether the officers acted with "deliberate indifference." There are questions regarding whether the officers knew Mr. Black had been shot and, even assuming without deciding that the officers could not tell by looking at the decedent, there is testimony that he told the officers that he had been shot. For these reasons, the motion is **DENIED**.

Accordingly,

**IT IS ORDERED** that Defendants, Officer Piotrowski and Officer Zayto's, Motion for Summary Judgment **[Docket No. 22, filed February 24, 2014]** is **DENIED**.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  August 22, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 22, 2014, by electronic and/or ordinary mail.

S/Julie Owens acting in the absence of LaShawn R. Saulsberry
Case Manager

10