# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Howard Linden, as Personal
Representative of the Estate of
Ronald Black, Jr. deceased.

       Plaintiff,

                                       Case No. 13-12450

v.                                   Hon. Denise Page Hood

Officer T. Piotrowski, Individually,
and Officer S. Zayto, Individually.

       Defendants.
_____/

## ORDER GRANTING DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT (Docket No. 32)

## I.    INTRODUCTION

Defendants filed a Renewed Motion for Summary Judgment [Doc. No. 32]. The motion is fully briefed and for the reasons below, the Court **GRANTS** Defendants' Motion.

## II.    BACKGROUND

On January 18, 2013, Decedent Ronald Black ("Black") attended a social gathering at a friend's house located at 322 Labelle in Highland Park. [Compl. ¶ 10]. At approximately 11:40 p.m., John Bain, another guest in the house, pulled out a gun and began firing shots. [*Id*. at 11]. Black was shot in the shoulder and

informed his friend, Antoine Scott, that he had been shot. [*Id*. at 11-12]. Highland

Park Police Officers T. Piotrowski and S. Zayto responded to the scene after

receiving a report of the shooting. [*Id*. at 13].

Upon arriving at the location, Officers Piotrowski and Zayto saw Antoine

Scott standing on the porch of the house with the handgun he wrestled away from

Bain. The officers ordered Scott to put the gun on the ground, handcuffed him, and

detained him the patrol vehicle. [*Id*. at 16-19]. The Complaint alleges that Scott

informed the officers that Decedent Black was inside of the home and suffered

from a gunshot wound. [*Id*. at 17].

According Defendants, they entered the home and encountered Bain, who

appeared to be fatally wounded, and Robert Givens, who was bleeding from his

abdomen.[Doc. No. 31 at 3]. The Officers also encountered Decedent Black.

Plaintiff says Officers Piotrowski and Zayto placed Black in handcuffs and

detained him, though Black had informed the officers that he had been shot and

repeatedly asked for medical attention. [Doc. No 1. at 21-22]. Instead of providing

assistance, Plaintiff claims that Defendant Officers told Decedent Black that he

was not going to the hospital but "going to jail." [*Id*. at 23]. The owner of the

home, Charlotte Givens, was also inside of the home at the time that the officers

were present and detained Decedent Black. [*Id*. at 24]. She heard Black tell the

2

officers "multiple times" that he had been shot and saw the officers "ignore[] . . .
Black's pleas for assistance." [*Id*. at 25].

According to Plaintiff, Officers Piotrowski and Zayto leaned Decedent
Black up against the wall "and kept telling him that he was going to jail. [*Id*. at 27].
Givens spoke to the officers and asked them to help Black because he has been
shot "but the officers did nothing." [*Id*. at 28]. Givens was eventually detained and
placed in a squad car to be taken to the police station. [*Id*. at 28]. At the time
Givens was taken from the house, Black was still detained and had not received
any medical assistance "for his obvious gunshot wound." [*Id*. at 29] Plaintiff says
an emergency crew arrived on the scene but did not render any medical assistance
to Black because the crew was not informed that he had been shot. [*Id.* at 30].
Plaintiff says by the time Black received aid for his injuries, it was too late. He
was pronounced dead at 12:54 a.m. and the cause of death was determined to be a
gunshot wound to the right shoulder. [*Id*. at 34].

According to the Sixth Circuit, EMS records indicate that a request for a unit
came in at 11:42 pm. This EMS unit was dispatched at 11:52 pm, arrived on scene
at 11:54 pm, reached Givens at 11:55 pm, and departed with Givens at 12:03 am. It
appears that a second EMS unit was dispatched to 322 Lebelle, but never made it
to the scene because it was diverted to Tamesha Glass, another person present

during the shooting. Tamesha Glass fled 322 Lebelle after the shooting and ran to a nearby liquor store and flagged down the EMS unit that was en route to 322 Lebelle. Another call for medical assistance came in at 11:47 pm. An EMS unit was dispatched at11:47 pm and reached the scene at 12:07 am—after the first unit had already departed with Givens. The medics reached Black at 12:10 am. According to the EMS report, the medics found Black lying handcuffed on the hallway floor, complaining that he could not breathe. He was unable to further describe his pain. The medics examined Black but did not see any blood spots on the exterior of his clothes. Black was wearing multiple shirts, which the medics began to cut off, one of the medics finally spotted the gunshot wound on Black's shoulder. While Black was being moved into the back of the ambulance, he began to vomit and he stopped breathing.  Black's pulse stopped and he was pronounced dead at 12:52 am.

On August 22, 2014, this Court denied Defendants' motion for summary judgment ruling that there was a material question of fact as to whether Defendants were deliberately indifferent to Black's medical needs. Defendants appealed and the Sixth Circuit ruled that Defendants did not act with deliberate indifference and were shielded by qualified immunity. The Court of Appeals reversed this Court's ruling and dismissed Plaintiff's §1983 claim. [Doc. No. 31]. Defendants move for

summary judgment as to Plaintiff's claim for gross negligence under Mich. Comp. Laws § 691.1407.

## III.   STANDARD OF REVIEW

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250-57 (1986). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Id*. at 248. A dispute about a material fact is genuine if on review of the evidence, a reasonable jury could find in favor of the nonmoving party. *Id*.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial." *Id*. at 324. The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. See *Muncie Power Prods., Inc. v. United Tech. Auto., Inc*., 328 F.3d 870, 873 (6th Cir. 2003). "The mere existence of a scintilla of evidence in support of

5

the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### B.    GROSS NEGLIGENCE

Gross negligence has a different standard than deliberate indifference. *Jones v. Muskegon Cty.*, 625 F.3d 935, 947 (6th Cir. 2010). Deliberate indifference is considered analogous to criminal recklessness, and thus, it is a higher standard of culpability than gross negligence. *Id*. Since the Sixth Circuit only evaluated

6

Plaintiff's deliberate indifference claim, the Court can examine Plaintiff's gross negligence claim.

Under Michigan law, government agents are immune from liability for most torts committed "in the course of employment or service" unless the agent's conduct amounts to "gross negligence." Mich. Comp. Laws § 691.1407(2); *Schack v. City of Taylor*, 177 F. App'x 469, 473 (6th Cir. 2006). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a). It suggests "a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v. Crabtree*, 263 Mich.App. 80, 90 (2004). Simply alleging that an actor could have done more or that a defendant could have taken extra precautions is insufficient under Michigan law to sustain a claim for gross negligence. *Id*. Rather, a plaintiff must demonstrate that an objective observer could reasonably conclude that the actor simply did not care about the safety or welfare of those in his charge. *Id*.

Furthermore, the plaintiff must show that the alleged misconduct was "the proximate cause" of the injuries. *Robinson v. City of Detroit*, 462 Mich. 439, 462 (2000). This means a plaintiff must show that the misconduct was the most immediate, efficient, and direct cause of the plaintiff's injuries. *Id*.

7

# IV.   DISCUSSION

Linden has failed to demonstrate that Defendants were grossly negligent. Plaintiff argues that Defendants delayed and denied emergency medical care to Black's obvious injuries. As the Sixth Circuit noted, Defendants arrived at the home of the shooting, secured the area, and within 7 minutes of arrival, requested ambulances at least three times. [Doc. No. 31 at pg 10]. EMS records indicate that a request for an ambulance - the ambulance that attended to Givens -  came in at 11:42 pm and arrived on scene at 11:54 pm. At 11:47 pm, five minutes after the first request for an ambulance, and before the first ambulance arrive,  a second request for an additional ambulance was made, but it appears this unit did not arrive because while en route to 322 Lebelle it was diverted to another victim of the shoot. Another request for an EMS unit was made for Decedent Black,  and that ambulance arrived at 12:07 am aided Black. [Doc. No. 31 at pg 3-4]. At most, there was a 25 minute gap between the time Defendants first requested an ambulance and EMS personnel arrived on the scene and rendered aid to Black. That Defendants made two, if not, three calls to EMS - at least one request which was made specifically for Black - to render aid to injured shooting victims is not indicative of individuals with an utter lack of concern for the safety or welfare of others, even coupled with the disputed fact that Black was calling out "I've been

8

shot too." Alleging that Defendants could have done more is insufficient to sustain an action for gross negligence. See, *Tarlea*, 263 Mich.App. at 90.

Linden alleges that Defendants should have redirected EMS personnel to attend to Black rather than the other shooting victims. However, even if the two officers indicated to EMS that they did not believe Black was shot, it is unclear whether EMS personnel failed to hear Black say he was shot. Therefore, it is possible that EMS personnel were on notice that Black was injured. Furthermore, as the Sixth Circuit noted, Plaintiff cites no law or authority mandating that Defendants had to direct the EMS workers in the manner in which they performed their jobs, or any law indicating that Defendants had the authority to direct EMS personnel in how they rendered aid.

Linden has also failed to show that Defendants conduct was the proximate cause of Black's injuries. Proximate cause in the context of gross negligence is misconduct that was the most immediate, efficient, and direct cause of the plaintiff's injuries. *Robinson v. City of Detroit*, 462 Mich. 439, 446 (2000). Taking the evidence in the light most favorable to Plaintiff, there is no evidence establishing that Defendants acts alone were "the one most immediate, efficient, and direct cause preceding [Black's] injury." *Id*. As the Sixth Circuit noted, Defendants did not cause Black's injuries and did not have reason to know about

9

the severity of his injuries, especially in light of the fact he did not manifest any obvious signs of injury, such as heavy bleeding like Givens. [Doc. No. 31 at 14]. Accordingly, Plaintiff has not established that Defendants were grossly negligent. See also, *Dean v. Childs*, 474 Mich. 914 (2005)(Michigan Supreme Court reversed lower court's denial of summary disposition regarding the alleged gross negligence of firefighters responding to a house fire by noting that "the" proximate cause of the deaths of the decedents was the fire itself, not the defendant's actions in response to the fire.).

## IV.    CONCLUSION

Defendants' motion for summary is **GRANTED**; this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.


s/Denise P. Hood
Honorable Denise Page Hood
United States District Judge

Dated: December 31, 2015

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 31, 2015, by electronic means and/or ordinary mail.

<u>s/K. Jackson</u>
CASE MANAGER
(313) 234-5014

11